UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                        SENTENCING SUBMISSION

  -against-                                  No.: 14 Cr. 00632 (JMF)

MICHAEL ANTHONY LUCARELLI,

                Defendant.
------------------------------------------------------------X

## PRELIMINARY STATEMENT

      Fortune has seldom smiled on Michael Lucarelli. Born dirt poor, with an abusive father who barely worked and refused to provide for his family, Michael and his siblings existed on food stamps. Despite these circumstances, Michael put himself through college and business school, and made work the one constant in his life.

      The letters from family and friends, submitted to the Court with this Memorandum as Exhibits C-G, describe Michael Lucarelli as one who has acknowledged the crime that has brought him here, and for which he expresses great and sincere remorse. He is working his way through the pre-sentencing procedures with the grace of God and some assistance from his family and friends. He is presently living and working in North Dakota, training with his brother, Stephen, to be licensed and to drive tractor trailers. He has been admitted to the Celadon Company's big rig training school in Indiana for an eight week course. This will be his future work. He will never again trade another stock or work in any stock related field. There is therefore no need for any sentence based upon deterrence or upon the danger of recidivism.

      The letters speak to his basic decency and his willingness to learn from his drastic mistake. As many of the letters emphasize, he is a threat to no one. The letter from Dr. Jeffrey Aronoff is particularly relevant because it describes the serious disease he has been plagued with for the past twenty years. Michael has passed all drug tests in connection with presentence activities and will be further and continuously tested by the trucking company whenever he drives a big rig.

      As Michael told the Court at the time of his plea allocution, he traded stocks while using material, non-public information in a misguided retaliation against his employer who owed him thousands of dollars in commissions. And he did so while working 14 hour days and using cocaine to ease his pain from Crohn's Disease enabling him to get through the day. Any monies he made, anticipated for his retirement, were confiscated

by the government. He is, once again, dirt poor. Concerning the plaintiff's medical history, a medical summary from Dr. Jeffrey Aronoff is attached as Exhibit A, outlining Mr. Lucarelli's history with Crohn's disease. Additionally, the general medical records on which Dr. Aronoff bases his summary are attached as Exhibit B.

It is respectfully suggested that a custodial sentence is greater than necessary to achieve the sentencing purposes of 18 U.S.C. § 3553(a), including the need to achieve general deterrence and to recognize the seriousness of the offense. Instead, we respectfully urge the Court to sentence Michael Lucarelli outside the guideline range, based on 18 U.S.C. § 3553(a) factors, specifically to any non-custodial sentence.

## MICHAEL LUCARELLI'S BACKGROUND

Michael Lucarelli was born on September 24, 1962 (coincidentally the same September date he entered his guilty plea). The middle of 5 children, Mr. Lucarelli has, like many people, been no stranger to challenges in his life. He faced confrontations throughout his childhood with his father, often feeling underappreciated and unsupported. Additionally because of his father's lack of gainful employment, Michael Lucarelli began a long career of work at age 12.

As stated above, work was the one constant in Michael's life, as he worked shoveling manure and in summer camp kitchens. This work began as a necessity for Michael, but soon came to provide a sense of solace for him. The early days of work also translated into his academic studies, as he graduated third in his class in high school, particularly excelling in math.

Michael moved out at age 18, and began to take advantage of his math skills by studying electrical engineering in Milwaukee. It was during this time that he decided to take advantage of his looks as well as his talent, and traveled to New York City to pursue a modeling career. Mr. Lucarelli spent the next ten years traveling for his acting and modeling career, while putting himself through college, obtaining a Bachelors degree in business and an MBA from California Coast University in Santa Ana, California. After acquiring his degree, business became Michael's singular focus and driving motivation.

After graduation, in 1990, Michael moved to California and joined a series of companies, learning the securities business along the way and always leaving for more money. Thus he worked at SG Hambros, Merrill Lynch, his own firm, Michael Lucarelli, Inc., Porter LeVay & Rose, Rubenstein Associates, Cameron Associates, Allen and Caron, and finally, LHA. The earlier jobs were in the securities sales business and the latter as an investor relations consultant. Michael never made more than $100,000 per year until 2010. He made as much as $115,000 thereafter and is owed more than $70,000 in fees from his last firm, LHA.

While at LHA, Michael averaged 14 hours of work per day, arriving in the early morning and working until late at night. Mike was the top salesman at LHA, bringing in millions of dollars for an $8 million dollar company. Not to be forgotten also is the fact that at this point Michael was suffering from very serious health problems, having been diagnosed with chronically inflammatory Crohns disease. Crohns causes severe pain, with frequent bowel movements and bleeding, and Michael had already been suffering from this disease for about 20 years. Combining Michael's insatiable work appetite with the pain associated with Crohn's disease, Michael turned to procuring narcotics from his co-workers. Fueled by his own passion for work and utilizing drugs to maintain his productivity, Michael worked to not only make a meaningful contribution to this company, but to also create a financial stability he never had growing up. At this point, Michael was working long hours, determined to maintain his productivity at LHA, when the company failed to honor its responsibility to properly compensate him.

Unfortunately for him, he decided on a self-help program while at LHA. Mike believed that it was his right to make back the monies LHA was not paying him. So Mike traded the stocks of his clients to make the money back. He believed he was investing for his retirement, concerned that his Crohn's Disease was worsening. The monies he earned through his illegal stock trades were never spent; they were for his retirement. Mike also lived frugally, in a 4th floor walk-up apartment in Manhattan. Now the sum total of his worldly possessions amount to a 1987 Pontiac automobile and a boat, estimated to be worth approximately $12,500 and for which he is unable to find any buyer.

Most importantly, Mike never told anyone about his trading, never spoke to clients or other employees at LHA, and never shared any confidential information.

Mike had been using drugs for more than 30 years at the time of his arrest. In maybe the only positive from his ordeal, Mike no longer uses drugs of any kind. He has never tested positive as he has undergone pre-sentencing testing on several occasions and has attended all required meetings.

His cocaine use peaked in 2013, and with it a frantic increase in stock trading. His trading, as he told this Court during his plea allocution, was driven by, cocaine, anger at LHA, long hours and pain from his Crohn's. All these factors collided to cause him to act illegally. Notably, he had never used material non public information in all his prior years of trading.

Mike's fortunes were not improved by his marriage in 2012 to Agnes Szalontai. He has not seen her since she left for Florida in March 2013. And when he Skyped her to discuss his present travails, he observed that there was another man in her room. Fortunately, there were no children. He still claims that he loved her and was enormously flattered to be able to attract a woman 20 years his junior.

His life has again hit rock bottom since his arrest. He has no money. He could no longer afford his apartment in New York and has moved to live with his brother in North Dakota. His saving grace has been his faith and the reintroduction of organized religion into his life. As the letters from some parishioners indicate, he has made peace with the circumstances that have brought him to this point. In looking forward to life after sentencing, he anticipates enrolling in the Quality Drivers School for which he has been accepted and will learn how to drive the huge tractor trailers. Celadon Trucking will pay for his training, room and board. He has already passed medical and urine tests and will be constantly monitored by the school and the trucking company.

Now Michael is dealing with the circumstances of his actions, forced to watch his one source of stability, his career, crumble in front of him. His assets are gone, his home is lost, and he is forced to retreat to the support of his family as a prodigal son. Now, he seeks the compassion of the Court at sentencing.

## **ADVISORY GUIDELINES**

Since the Supreme Court's decision in *United States v Booker*, 543 U.S. 220 (2005) the sentencing Guidelines are merely advisory, freeing courts to "tailor the appropriate punishment to each offenses in light of other concerns." *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (*en banc*). Although the Court must make a finding regarding the correct Guidelines range, "[a] district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *Id.* at 189. As demonstrated herein, a Guidelines sentence would not be reasonable in this case.

When creating a sentence, the court's duty is to impose a sentence that is sufficient to accomplish the sentencing purposes.

The factors that are to be considered under 18 U.S.C Section 3553(a) for sentencing purposes are:

1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
2) to afford adequate deterrence to criminal conduct;
3) to protect the public from further crimes of the defendant; and
4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

As outlined in *United States v Johnson*, 567 F.3D 40, 50 (2D Cir. 2009), the above factors must be considered on an individual assessment based on the facts in the case. Additionally, as outlined in *Kimbrough v United States*, 552 U.S. 85, 101 (2007), the Court has the ability to make the determination that the "Guidelines sentence should not apply" when "the Guidelines sentence itself fails to properly reflect § 3553(a) considerations, or... the case warrants a different sentence regardless".

*Kimbrough*, 552 U.S. at 113. Each of the above factors, when applied in this case, support a downward departure from the sentencing guidelines.

When considering the seriousness of the offense in this case, we must look at the fact that this crime happened over a short period of time, did not involve other parties, and it was not committed directly against any one person; it was committed in a setting of drug addiction and poor health. Also, the defendant's goal was to solidify himself financially. It would follow then, that the just punishment for such a crime would be primarily financial. The defendant has already relinquished all of his financial assets to the government, hundreds of thousands of dollars, and therefore has already received a significant punishment correlating to the nature and degree of his crime.

Concerning deterrence, this crime occurred because of the defendant's misplaced action against a company that wronged him. This is not some protracted and longstanding scheme, but rather an improper direction of anger. He quickly realized how wrong his actions were, and has shown that this is not something that would happen again. Additionally, this crime is specific to this particular industry, and therefore prison time will not deter the defendant, as he will not even be working in this industry. The defendant's loss of all of his financial resources due to immediate forfeiture, as well as the fall from grace in his job and this industry serves as sufficient deterrence.

The next factor to be considered when imposing a sentence is how the sentence will protect the public from any further crimes from the defendant; his crime was not actually committed against a person or corporation. Additionally and most importantly, the defendant will not work again in this industry. Thus, an increased sentence will not serve the purpose of protecting the public from further crimes.

Lastly, concerning the fourth factor, the best help the defendant can hope for will be assistance to reclaim some semblance of a normal life. He has nothing. If not for his brother, he would be in a homeless shelter. The most effective correctional treatment will make Mike Lucarelli into a contributing member of society. He has taken giant steps in this direction by learning a new job, and preparing to enroll in a recognized driving program (See Exhibit H). The needed training and education for Mr. Lucarelli will not be found in the penal system, but rather in the workforce.

When assessing this case based on the factors for sentencing, it is clear that an extensive prison sentence will not be the best method to satisfy the goals of sentencing. For the above reasons, Mr. Lucarelli respectfully request that the Court consider probation as an appropriate sentence.

Dated: December 24, 2014
New York, NY

Respectfully submitted,

CUOMO LLC

By: _____
Patrick W. McGinley
pmcginley@cuomollc.com

Laurent B. Chevalier
lchevalier@cuomollc.com

*Attorneys for Defendant
Michael Lucarelli*